Case number 233924, USA v. Claude Coleman, or Arguments Not to Exceed 15 Minutes per Side. Ms. Berant, you may proceed for the appellant. May it please the court, Casey Berenty on behalf of the appellant, Mr. Coleman. Good morning. There are four issues in this case that warrant reversal, but I'd like to spend my limited time focused on the unlawful seizure of Mr. Coleman and the career offender finding. Beginning with the unlawful seizure, I think it's important to note what did and did not occur on the evening of May 22nd, 2021. What we do know is that evening, Cleveland Police Task Force officers, excuse me, were briefed that evening on areas of the city that they should proactively patrol. And we know that one of those areas happened to be 105th and Gooding Street, the street that Mr. Coleman happened to be parked on. Officers convened at some point in their shift at a gas station and decided to, in an element of surprise, follow one another down the wrong way of the one-way street on which Mr. Coleman was parked. At this point, we know that officers did not have any reasonable suspicion of criminal activity or probable cause to justify them driving the wrong way down the one-way street on which Mr. Coleman was parked. Does the record reflect, counsel, what the time gap was between the moment they start driving the wrong way down the street and the moment they see the open container? We don't have their footage on at that time. The footage does not start until after they are parking their vehicles on the street and getting out to surround the vehicle and address the open container. What does that mean? The minute he can see the car, the minute they're on the street, but he can't see them? What does that mean? Yes, Your Honor. The minute that he can see the flashing lights driving down the street. He's seized. Right, as soon as he sees that. So anyone on the street at that point could bring a 1983 action for seizure, unlawful seizure? Right, if the... Anyone. Correct, Your Honor. If the events occurred like what happened to Mr. Coleman that evening, where officers continued to block the street where Mr. Coleman was parked and then converge onto in front of Mr. Coleman's vehicle and not allowing him to leave after being aware that he was not... It's quite clear when they converge. That's quite clear. I get that point of the seizure, but the thing about just the minute they turn onto the street, particularly in light of the fact that there's testimony that's, I guess it's Officer Kalansky says it's, quote, almost immediately that they saw the open container. Am I right? Yes. That's what he says, yeah? Yes, Your Honor. He does say that. So I still think that driving the wrong way down the one-way street, officers must have had some kind of reasonable suspicion or probable cause in order to effectively create a blockade of any individuals that were parked on the street that evening. We see from the video footage that officers came from both ends of the street. So they were parked not just in front on the wrong way street, but also behind Mr. Coleman's car, effectuating a blockade almost immediately. So he was seized regardless of them seeing a open container violation. Immediately, they had planned to conduct this sweep of the street. So why is Coleman seized? I mean, why can't you just get out of the car and walk away? I mean, let's just say, you know, it's 100 yards, 200 yards away. The officers turned down this one-way street. Why can't you just get out of the car and walk away? Yes, Your Honor. Coleman cannot get out of his car because the cops immediately get out of their vehicles and converge around. I think I'm trying to pursue the line of questioning Judge Ritz started with, which is when this became a seizure. And you're taking the view that it's the minute they turned down the road. And I'm not so sure about that. Maybe I need to know that turning down the road and the car how far away they were. Maybe that would help. What's that gap? Do you have a sense for that? I do not. From the video cam footage, it shows that they're parked maybe a few hundred feet away from his vehicle when they do eventually stop their cars. No, no, no. But maybe you are answering the question. Your point is the minute they turned down the one-way street, that's the seizure, right? Correct. How far away is that from Coleman's car? I do not know off the top of my head where the beginning of that street starts and how far away Mr. Coleman was parked. But we do see from the... Well, I mean, if it's just... if the phrase is almost immediately and you don't know, doesn't that suggest it wasn't very far away? You're right, Your Honor. It couldn't have been very far away because officers were immediately getting out of their patrol vehicles to converge around Mr. Coleman's vehicle and the open container violation on the street. So it couldn't have been... Is your analysis of the case and the outcome that you propose, does it depend on the difference between the seizure occurring upon turning onto the street or when they surround the car? I think that in this case, it actually does not matter because they converge around Mr. Coleman's car before they even address the open container violation and before any of the other events occur that evening. So he was seized whether officers drove the wrong way down the one-way street and parked their vehicles or when they immediately got out and surrounded his car and told him... So it's not that you think the law does not support your side if it's the convergence of the police officers versus the decision of the police officers to pull into the back street and swarm in. So then we are governed by case law that we're all pretty familiar with, aren't we, about the right to detain or pause someone from leaving their car where the officers are beginning their securing of the location, right? Correct. What's your best case to say that that securing of the location was not appropriate in this case, that the police officer's position does not fit within Sixth Circuit law? I think the best case would probably be United States versus C where we have similar facts where an officer did not have reasonable suspicion but was in a quote-unquote high crime area and saw something that he believed that he needed to look out for that evening and so he blocked an individual's car in order to ascertain the individual's identities and to maintain the status quo while determining whether or not there was anything that he needed to be... But there was no violation of law in that one. There was, Your Honor, there was a violation of law. It was the warrantless seizure was when the officer blocked the individual's car in C. No, I may not be remembering C but what I meant by that is here, you know, you can call an open the U.S. Supreme Court's decision in Wren. I mean, it can be a taillight out. I mean, they're just, they're allowed to stop you when there's a violation. We don't inquire into their motives and then if in the course of the stop they find evidence of other crimes, you got a problem and the way you described C, it didn't sound like that was a case where the officers had reasonable suspicion of a violation of the law before the seizure. Initially, the officer in United States C believed that he didn't see a front license plate and that was the initial cause of blocking the vehicle in and that was the quote-unquote traffic infraction but this court found that that was not a valid reason because that's not a traffic infraction to not have a license plate on the front of the vehicle. You're agreeing here open container is a violation even if it's modest? Your Honor, I agree that it's a violation but Mr. Coleman was not committing that violation. Right. So now, but then that just takes you into the, you know, think of the car stop cases. This seems very similar to a car stop case to me anyway in terms of officer safety. The passenger didn't do anything. They're just, it's just bad luck. They happen to be with someone that didn't use a turn signal, whatever it is, but we all know that the officers have quite a bit of control of once they've stopped that car, right, for officer safety reasons. They can decide to leave people in. They can decide to get them out and they can certainly decide to make sure they stay there while they're dealing with the situation. When you have a car and two people outside a car, it's the same, it's the same set of safety dynamics. Everyone's close together. They were obviously talking to each other, so why isn't it just like a car case? If you can get them out in the car, why can't you do the same thing if the person that did the open container is with these people? Just from an officer safety perspective, what am I missing? So I think two things, Your Honor. I don't think we have officer safety here in this situation and we also don't have an initial justified stop of the vehicle itself. Like I said, the vehicle was not committing the open container violation and it's a stretch of the Fourth Amendment to make it a collective violation when it needs to have an individualized suspicion of criminal activity or a connection to the individual that's committing the crime. We don't have that here. We just have a car that is adjacent to the vehicle. I also think that we need objective... But everything you said is true of the passengers in a car, right? They didn't... Passengers did nothing wrong. They just had the bad luck of being in a car that didn't have its right taillight fixed. And so the same intrusion on their liberty happens there because they're in proximity to the driver. And here, the car is in proximity to the open container. So I'm just trying to figure out. I mean, I think you're probably right. Like if the minute it turned down the road, Coleman gets out of the car and just starts walking away. I think, I don't know why the officer could have stopped him at that point. That's probably true because he'd be not creating a risk. He'd be mitigating a risk, one fewer person there. But I don't know what to do when he's still there when they arrive. I don't think that, Your Honor, that Mr. Coleman had any choice at that time. It happened so quickly that the officers drove down the street very quickly in succession of one another with their lights flashing. Mr. Coleman looks up from eating his Chinese food with his girlfriend and then sees officers stop and then immediately get out of their vehicles and then converge around his car. He had no time to get out and then walk away from the scene. Does our Prigmore case govern this, that an officer has a right to ask passengers to remain in the car during an event, during their efforts to secure the scene? Or how do you distinguish Prigmore to say that it does not govern here? I think that, Your Honor, it does not govern here because, again, we don't have the initial justification for the stop here. Officers did not see Mr. Coleman committing any traffic infraction or have any reasonable suspicion that he had committed any crime or that he was in the process of committing a crime. What we have, again, is just an open container violation on the street adjacent to him. And I think it's a stretch of officers' safety. I see my time has run out. Do you have one more question? I would like to ask about the sentencing issue, if I may, and the Shepard documents, which we've all looked at, of course. It's not a new problem where we have Shepard documents that are a little hard to parse. There's some things that point in your favor, some things that point in the government's favor. Why, here's my question on this for you, is why did the 2913.02 theft offense, why was it listed on these documents if that wasn't the underlying theft crime? I'm not sure why Ohio prosecutors listed 2913.02 as well as 2913.01 together in their Shepard documents. I think this might be a pleading issue where they determine when it comes to trial what they are going to end up proving as the underlying predicate theft offense. We also know that 2913.02 can be committed in five different ways as well. I think, really, when it comes to this issue, the district court below relied on overturned precedent, United States v. Carter, and never made a finding as to the modified categorical approach. Why isn't the answer that this shows the contrast with Ivey? If you just have .01, you have a whole range. If you have .01 and .02, .02 narrows the range. Ivey actually helps the government in a weird sort of way by contrast, which I guess is the view we took in Rice, an unpublished decision. I think from this court's decision in United States v. Servanac, you guys mentioned that we cannot presume that 2913.02 is the appropriate offense when it's also listed with the 31 different other theft offenses because this would be going beyond what the state judge and the defendant necessarily found as the underlying basis for the agreed-upon plea. Well, let's hear from the government on this, and then you'll get your full rebuttal. Thank you, your honors. Thank you. All right, Ms. Ford. Good morning, your honors. May it please the court, Laura Ford on behalf of the United States. I'm going to begin with the detention issue before sentencing because unlike the Ohio robbery statute that's been before this court many times, this one seems a little different involving establishing a safe perimeter around an investigation scene. In the totality of circumstances, looking at the reason, the length, and the degree of invasiveness under the Fourth Amendment's touchstone of reasonableness provide a limited leeway for officers facing inherent danger of a street-side investigation to establish a safe perimeter in those first few seconds of encountering a suspect, which would include detaining nearby bystander within arm's reach. Counsel, I think I've tracked your length argument and your degree argument, but I'm struggling with the reason argument. This was an open container, so help me understand the risk to officer safety. The risk to officer safety isn't necessarily tied to the violation itself. I mean, the risk is also with whatever other criminal offenses that you could find in the process. This was a dangerous neighborhood. It was a Glenville neighborhood known for gang activity. There had been 12 murders within the recent years. This particular house that the car was parked in front of had had shots fired, and there had been a firearm that was seized from a car just a couple houses down during a disturbance. So all of those factors are known. That's why officers went in a group. And it was a criminal offense, and certainly they were entitled to enforce it. And going to your question about when the seizure occurred, I think a critical fact in this case is that there is that testimony that almost immediately as they're turning down the street, they see two people next to this car with an open window. Can I just interrupt you just real quickly? Do you have a sense of the distance between turning down the street and the car, how far away they are? I don't, your honor. I'm sorry. I know, you know, the video shows when it comes on that they're leaving the gas station, and it's just a matter of seconds. It's just, you know, not even 10 seconds when you're getting there. So the lead car is the one that sees the violation, and then you have the other officers following. But with it happening almost immediately, that's when the probable cause arises, and I would disagree. Here's my concern with your answer, is that it relies very heavily on this being a high crime area, and I recognize that that would, could be one of the factors that police officers consider. But I don't see, I don't see our case law saying that that can be the only factor, and I don't see that the fact that it's in a high crime neighborhood would be sufficient to alter what the police have to do in respecting the rights of bystanders. Well, in this case, I would say that simply driving down the street does not constitute a seizure. That's more of a right-of-way issue. That's simply your means of egress is temporarily unavailable, and it really wouldn't matter whether the police were going down one way or the other, whether it was EMS, people arriving for a yard sale, or a party. It's the moment that police surround the car to investigate this violation. That's when the seizure occurs. That's not what the district court said, though. The court said that it didn't find it important to really draw a distinct line between when he was seized, but even looking at it most favorably to Coleman, that, you know, if he was seized when the officers were driving down the street, that it was reasonable because it was less than 60 seconds. When the officer seized Coleman certainly would be a legal finding that would be reviewed de novo, and the court is not bound to that finding. But I think that, you know, we'd have a lot of seizures if just simply driving down the street and blocking someone from getting out of their driveway, for instance, would constitute a seizure. But going back to the Fourth Amendment's touchstone of reasonableness, that is not an unreasonable seizure just driving down a street. And here there were significant safety concerns. Your argument is that just driving in is not unreasonable to be a seizure? That is not a seizure. Just driving down is not a seizure. That is not a seizure, all right. So then we're in this continuum, because everything has its own particular factual circumstances, and so you're in a continuum. Driving down the street is not sufficient, we would agree. What is it that differentiates this when we have what Chief Judge Sutton referenced is this is simply an open container violation with people who are not in that vehicle. What is it that makes that an acceptable seizure without particular reasonable suspicion of the people in the car? That's where the officer safety component comes in, because this person has his window open, he is in with arm's reach of this person who is literally right next to his window. So you have the officers are still arriving, so they are facing oncoming traffic if he were permitted to drive away. You also, if he were to open his door, they would encounter physical interference. And you have no... Could they have dragged him out of the car and handcuffed him? I think that that would be a much different case and much more excessive. This was a minimal intrusion for he was in his car. That would actually make them safer if they did that. Well, I think that they needed to conduct a pat-down first, and I think that's a critical fact too, is that they hadn't even patted down the suspect yet. They're just in a process of doing kind of those preliminary steps when the officer is checking Coleman's car to make sure there's nothing that he sees that's dangerous from the exterior. And simply trying to get command of the perimeter in those very first few seconds is what makes... A pat-down for what? The bottle cap to the open container? Or weapons. This is an arrestable offense. It's a fourth-degree misdemeanor. I agree, but it's not a violent offense. It's not a violent offense, but it still makes it an offense that you could conduct a pat-down. And I think with the safety concerns with being in this particular neighborhood in front of a house that has had shots fired, having a firearm in a car a couple houses away, that certainly raises safety concerns. They don't know who's in the car. This car has compartments that would possibly conceal a weapon. You know that the occupants likely know the person who's committed the violation, and the officers certainly don't know that Coleman is committed to aggravated robbery. So there's a lot they don't know, and it's just those very first few seconds that he is detained is what makes this reasonable. To be able to safely conduct a frisk of this person that you're investigating, and by that time they already have probable cause for the marijuana violation because the officer sees it in plain view in the vehicle. And it's about, I just want to make sure I understand correctly from the record, about 20 seconds difference before they see the marijuana in plain view? In plain view, I would say when the officer is starting to check it, it's not even 10 seconds when he's looking in the car and then he goes to Coleman's window to say, hey, you need to get out. It's a very, it's difficult, and I think that's why the district court was kind of struggling with trying to draw the line on when the detention occurred, because it's so fluid. It's comforting to know that it was difficult for the district court. Yeah, because it's so fluid of a situation. You've got two people, you know, immediately next to this open car window, and so they start to lead the person who committed the violation, but they don't even reach that point. They're going to lead him to a car that's parked in the driveway behind. They don't even get to that point before they've already seen the marijuana. A great deal of the argument in your brief is from what the 10th and 11th Circuit case law. What is the best case law in the Sixth Circuit? You know, I did not find anything really directly on point. I think the Prigmore case in terms of having people stay in their car, like if you can order people out of the car, then you certainly can have people stay in the car for safety reasons, I think would be applicable. And I think that actually makes it a much more minimal intrusion to say, hey, you know, would you mind turning off your car? Can you just stay put for a few seconds? And that's what makes this detention reasonable, because it's just in those very first few seconds where you're taking control of the situation, and you're going to conduct a pat-down of this person you're investigating. Certainly, if it extended for a very long time, then that's another matter. But they were going to take the suspect away from this car. At that point, I think you have a different situation, but they hadn't gotten to that point before the marijuana was spotted. Is there a case law that does something that's the reverse here? So imagine someone, so it's a tail light infraction. So it's like open container. It's not uber dangerous. So for whatever reason, they're following this car that has one tail light out. The car stops. It's now talking to two people. They have no suspicion about these two people. They put the lights on. They now stop the car, for which they have an infraction. I think we all agree they can either force the passengers to stay in the car or get them out of the car for officer safety. Is there any case that says what they could do to the two people that are now talking? They're right there, and they were talking to the driver or passenger. Can they pat them down because they happen to be next to somebody with a traffic violation? I think you'd have to have some type of individualized suspicion to be able to do a pat-down. In that case, the people are on the exterior of the car. You could ask them to simply leave because the people that you need to deal with are already contained. Here, you have the suspect right on the outside of this window within reach of Coleman. So to detain him, to ask him just to simply to stay put, ensures that they... I was trying to make it exactly the same. They're right there. Everything's exactly the same. Just the suspicion is about the car, not someone outside the car. So why wouldn't it be symmetric is what I'm getting at. I think there would be more risk in asking Coleman to leave while the officers are still walking down the street and would face oncoming traffic because they still need to take the suspect away from the car for Coleman to pull away. So they hadn't even had an opportunity to do that. I think it's much easier for someone to walk away who's not suspected of anything. Here, they could do a pat-down because of the offense. What about our Ingram case from 1999 where officers violated the rights of occupants in a home when someone outside ran into the home and they detained the occupants of the house while they searched the house for that person? That's kind of the two different party groups. The person who ran into the house and the owners of the house are like the people in the car here. In that case, we said that's not an appropriate detention. Your Honor, unfortunately, I don't remember the facts of those cases, but I would have difficulty distinguishing that from the Summers framework. If they're on site, there would be certainly some safety concerns with trying to ‑‑ We said that that was a violation of the rights of the occupants of the house. And so the comparator here is has there been a violation of the rights of the occupants of the car? I think there's still safety concerns in this situation given the proximity. You have areas where weapons could be hidden and this driver is within reach of the officers. He's not going to be able to distinguish that from someone who just entered the home. You could ask them to leave. But in this case, with them just trying to establish a perimeter and get command of the situation, this was sufficiently limited. It wasn't greater in scope and it certainly wasn't greater in duration than necessary to avoid that type of interference with trying to process this investigation. Counsel, on the sentencing issue, what do we make of the fact that the indictment mentions 2913.02, but the judgment sheets don't mention anything about that? Well, Your Honor, I think that it's reasonable to infer that the offense that he pleaded guilty to was not amended other than dropping the firearm specification. That the indictment charging the 29 13.11.01 and 29.13.02 offense makes clear what offense was at issue under this umbrella statute that has 31 different theft offenses. I think that's critical in this case because it indicates that those two offenses are to be read together. What's interesting about 29.13.01 is it's a fraud chapter and it sets forth a number of terms that say this means that, and it doesn't prohibit any kind of conduct. It doesn't punish any kind of conduct. It lists separate offenses which themselves prohibit conduct. And I think... So in your reading, that reference to .01 in the indictment was superfluous? I think it's giving you a category of crimes. It's saying it's theft as defined under this statute, and now we're telling you it's this specific theft. It is a taking theft. Is there any Ohio law or anything that we can look to to ground us in making that judgment? Because you understand where we are right now. And I think that there would be... That absolutely narrows it to the specific offense that they were about. Because I guess maybe the best analogy would be to a federal indictment saying you were charging a distribution offense and you referenced section 802, and you said distribution as defined under 802, but it's in violation of 841. And when you're convicted, it's under 841. It's not 802 because 802 doesn't do anything. It doesn't prohibit conduct. It doesn't include any punishment. And I would argue that the argument that because you charge this in the conjunctive, it can be read disjunctively, tends to apply to means of committing a crime. And this is an element of robbery. And the 31 offenses that are listed are separate offenses that are not subject to the same penalties. Take for instance, the theft from office is a felony, a fifth degree felony, whereas workers' compensation fraud is a misdemeanor. So the fact that we are listing the 29-1302 tells us exactly what he was convicted in this case. And I think that is instructive in this case. And it demonstrates that we know exactly what he was convicted of. This case has what Ivey, what Brown, what Cervinac lacked in knowing exactly which one of these 31 offenses that he committed. And I think you'd have a procedural due process issue if you charged him with 29-1302 and it was something completely different. What you really meant was workers' compensation fraud. There's no indication that when he pled guilty that this was amended in any other way except for dropping that firearm specification. And I'm sorry, I see my time is up. If there are no further questions, we'd ask that this court affirm the district court's judgment. Thank you, Your Honors. Thank you very much. Any rebuttal? Just very briefly on the career offender finding. I think that all this court has to do is remand for resentencing because the district court did not find the predicate theft offense. It did not believe that it had to engage in the modified categorical approach. As to the unreasonable seizure of Mr. Coleman, I want to also briefly state that the officer's safety justification is not reasonable under these circumstances because the government cannot point to objective facts to ground itself in an actual threat to officer safety that evening besides being in a high crime area. Because the violation is so modest, open container, is that the point you're making? In other words, there's no officer safety risk when all you're doing is investigating someone drinking in an open container? Your Honor, I think that the severity of the crime is something to consider. I also think that the dangerousness of the individual that you are intending to apprehend- I'm sorry. I agree that those things would add to the officer's safety, but what I'm struggling with is why in all the car stop cases, it can just be a broken taillight and yet they still have authority to get people out, keep them in, pat them down if they take them out. I thought that was pretty established. Having a taillight out doesn't create great officer risk. Right, Your Honor, but that's also assuming that the car is the one that's committing the violation. We know here that it's an individual adjacent to the vehicle, so the car has not been justified in its stop by the officers. No, I guess I see the car cases about- the key word is proximity, and it's bad luck that Coleman's car is next to the person with the open container in the way it's bad luck to be in the back of a car when the owner of the car has a traffic safety violation. I just can't figure out how to justify one. We can do whatever we need for officer safety as to the passengers. Why it doesn't apply the same when the proximity is identical. I mean, their arms reach. That's what I can't sort out in my head. Your Honor, I think because that would create an exploitable exception to the Fourth Amendment if we allow just near proximity. I mean, Wren is about as exploitable as it gets. I mean, Wren allows pretextual stops. Courts say we're not going to get into it. If you're violating the law, you're at risk. That's the essential answer to Wren, and maybe that's wrong, but I think that has to be what the judgment is. Right, Your Honor, but Mr. Coleman was not violating a law when he was collectively seized in that moment because of an open container violation just near him that evening, and I think as Judge Strange brought up, the Ingram case has already distinguished Michigan v. Summers from situations where a warrant is not involved and where officers do not already have probable cause to be in the area that they are in and where officer safety is not reasonably justified under the given circumstances. Counsel, on your first point on rebuttal, you suggested a remand on the sentencing issue. Do you have any reason to believe there would be additional Shepard documents that could shed light on this question that the district court would then have in front of him? I don't believe so, but I believe that it's for the district court to make that finding. Understood. There were two convictions, too, right? That wasn't really clear to me at first, but there were two aggravated robbery convictions, but essentially we have the same Shepard documents. Correct, Your Honor. Thank you. Were the robberies at different times? They were the same year, I believe, Your Honor. But then there was also a drug conviction, so if either of the robbery convictions qualify, the enhancement was proper? That's a question. Correct, Your Honor. Okay. All right. Thanks to both of you for your excellent briefs and arguments. It's a tricky case, so it's great to have good lawyers, so thank you very much to both of you. Appreciate it. The case is submitted, and the clerk may call the second case.